UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KELLYS ALEJANDRA MACHADO-MATOS,

    Petitioner,

v.                                         Case No. 3:26-cv-360-MMH-LLL

GARRETT J. RIPA, et al.,

    Respondents.

_____

## ORDER

### I. Status

Petitioner Kellys Alejandra Machado-Matos, an immigration detainee, initiated this action through counsel by filing a Petition for Writ of Habeas Corpus (Doc. 1; Petition) on February 18, 2026. Machado-Matos subsequently filed a Motion for Temporary Restraining Order (Doc. 2; Motion). On February 24, 2026, the Court granted in part Machado-Matos's request for a temporary restraining order and enjoined Respondents from removing her from the Jacksonville Division of the Middle District of Florida through March 10, 2026. See Temporary Restraining Order (Doc. 6). The Court also notified the parties that it would consolidate consideration of the request for a preliminary injunction with an adjudication of the Petition on the merits and set a briefing schedule. See id. Respondents filed a Response to Construed Request for

Preliminary Injunction and Petition for Writ of Habeas Corpus (Doc. 7; Response) with exhibits (Doc. 7-1). Machado-Matos filed a counseled Reply (Doc. 8; Reply). This case is ripe for review.

## II. Machado-Matos's Petition

Machado-Matos, a citizen of Venezuela, entered the United States with her minor child on December 28, 2023. Petition at 4. "Upon encounter by Department of Homeland Security [(DHS)] officers, [Machado-Matos] immediately expressed a fear of return to Venezuela." Id. DHS processed her for placement into removal proceedings. Id. at 5; see also Doc. 1-1 at 2–4. Machado-Matos subsequently applied for asylum, withholding of removal, and protection under the Convention Against Torture. Petition at 5. Since her entry, Machado-Matos has continuously resided in the United States with her minor child. Id.

On November 23, 2025, local law enforcement in Orange County, Florida, arrested Machado-Matos for domestic battery. Id. The State of Florida did not pursue criminal charges and determined that she should be released from custody. Doc. 8-1. However, she was transferred into DHS custody and determined to be removable under 8 U.S.C. § 1182(a)(6)(A)(i). Petition at 5. Machado-Matos submitted a request for a bond hearing before an Immigration Judge (IJ) pursuant to 8 C.F.R. § 1236.1. Id. at 6. But the IJ denied her request

2

for lack of jurisdiction, citing In re Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). Id.; see also Doc. 1-1 at 12–13.

Based on the above, Machado-Matos argues that she is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is entitled to a bond hearing. Id. at 6–11. As relief, she requests, inter alia, immediate release. Id. at 11.

## III. Analysis

The Court first addresses Respondents' arguments that two statutory provisions—8 U.S.C. § 1252(g) and § 1252(b)(9)—deprive this Court of jurisdiction to adjudicate Machado-Matos's claims. See Response at 5. Because the Court rejects those arguments, the Court then addresses the merits of Machado-Matos's claim.

### a. 8 U.S.C. § 1252(g)

Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272

(11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." Reno, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. Camarena, 988 F.3d at 1272.

Here, Machado-Matos is not attacking ICE's decision to commence removal proceedings, adjudicate her case, or execute an order of removal. Indeed, Machado-Matos seemingly does not have an order of removal. Instead, Machado-Matos is attacking ICE's decision to treat her as an "applicant for admission" under § 1225(b), which imposes mandatory detention, rather than as a noncitizen under § 1226(a), which permits a bond hearing before an immigration judge. Thus, the Court finds that § 1252(g) does not bar Machado-Matos's claim.

### b. 8 U.S.C. § 1252(b)(9)—the "Zipper Clause"

Under the "Zipper Clause," "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). But "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 140 S. Ct. 1891, 1907 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018)). The Eleventh Circuit has "clarified that the zipper clause only affects cases that 'involve[ ] review of an order of removal.'" Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1257 (11th Cir. 2020) (quoting Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1367 (11th Cir. 2006)).

Machado-Matos does not appear to have an order of removal. Nor is she seeking to challenge the decision to seek removal or the process by which removability will be determined. Instead, as found above, she is challenging her classification under § 1225(b), which requires mandatory detention. Thus, § 1252(b)(9) does not bar this Court's review of her claim.

### c. Exhaustion

A petitioner need not exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140, 148 (1992). Recently, the Board of Immigration Appeals (BIA) found that immigration judges have no authority to consider bond requests from noncitizens who entered the United States without inspection "because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." In re Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). Thus, the BIA has already "predetermined" the issue. Here, Machado-Matos sought a redetermination of her custody, and the IJ denied the request on the belief that immigration judges lack the authority to consider such requests under Hurtado. Doc. 1-1 at 12–13. To require Machado-Matos to seek review from the court that issued the Hurtado decision would be futile. District courts around the country, including some judges on this Court, have reached this same conclusion and declined to dismiss similar cases based on the alleged failure to exhaust. See Patel v. Hardin, No. 2:25-cv-870-JES-NPM, 2025 WL 3442706, at *3 (M.D. Fla. Dec. 1, 2025) (collecting cases).

Considering the circumstances, the Court rejects Respondents' exhaustion argument.

### d. Merits

The underlying premise of Machado-Matos's claim is that she should be classified under 8 U.S.C. § 1226(a) and afforded a bond hearing before an immigration judge instead of being mandatorily detained under 8 U.S.C. § 1225(b)(2). But Respondents argue that ICE is detaining Machado-Matos under the mandatory detention provision of § 1226(c). See Response at 2, 6.

Section 1226(c) mandates detention during removal proceedings for a limited class of deportable aliens—including those convicted of an aggravated felony. Congress adopted this provision "against a backdrop of wholesale failure by the INS [(United States Immigration and Naturalization Service)] to deal with increasing rates of criminal activity by aliens." Demore v. Kim, 538 U.S. 510, 518 (2003). With the Laken Riley Act, Congress recently expanded the class of deportable aliens subject to mandatory detention to include those who entered the United States and were charged as inadmissible under § 1182(a)(6)(A)(i) or (a)(7) and

> is charged with, is arrested for, is convicted of, admits having committed or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault, of a law enforcement officer offense, or any crime that

7

> results in death or serious bodily injury to another person . . . .

8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added). "'[S]erious bodily injury' [has] the meaning[ ] given such term[ ] in the jurisdiction in which the acts occurred." 8 U.S.C. § 1226(c)(2).

Here, local law enforcement arrested Machado-Matos in Orange County, Florida, for "Battery—Domestic Violence (Misdemeanor 1st degree)." Doc. 7-1 at 4; see also Doc. 8-1 at 1. Although neither the pleadings nor the exhibits submitted by the parties identify the provision of the Florida Statutes under which Machado-Matos was arrested, it appears Machado-Matos was arrested under sections 784.03(1)(a) and 741.28(2), Florida Statutes. Section 784.03(1)(a) provides that a person commits a misdemeanor battery when she "[a]ctually and intentionally touches or strikes another person against the will of the other" or "[i]intentionally causes bodily harm to another person." And, under section 741.28(2), domestic violence includes any battery "resulting in physical injury or death of one family or household member by another family or household member."

The statutes pursuant to which Machado-Matos was arrested do not necessarily require serious bodily injury to occur. Because there is no indication that Machado-Matos's arrest was necessarily for a crime that caused

8

serious bodily injury,[1] the Laken Riley Act does not control, and the Court finds Machado-Matos is not properly detained pursuant to § 1226(c).

Next, insofar as Respondents argue that Machado-Matos is properly detained pursuant to § 1225(b)(2), not § 1226(c), the Court is not persuaded. Section 1225 governs "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted" or those "arriv[ing] in the United States." 8 U.S.C. § 1225(a)(1); see Jennings, 583 U.S. at 287 (noting that under § 1225, "an alien who arrives in the United States, or is present in this country but has not been admitted, is treated as an applicant for admission" (internal quotation marks and citation omitted)). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). Immigration laws require applicants for admission to be inspected by immigration officers to determine whether they should be admitted into the country. Jennings, 583 U.S. at 287. Certain applicants are subject to expedited removal. See 8 U.S.C. § 1225(b)(1). But, as relevant here, § 1225(b)(2) "serves as a catchall provision," Jennings, 583 U.S. at 288, and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien

---

[1] Neither party submits an arrest report, let alone describes the incident precipitating Machado-Matos's arrest.

9

seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained," 8 U.S.C. § 1225(b)(2)(A).

On the other hand, section 1226(a) states: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General "<u>may</u> continue to detain the arrested alien" or "<u>may</u> release the alien on bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)-(2) (emphasis added). The Supreme Court has recognized that this section "applies to aliens already present in the United States." <u>Jennings</u>, 583 U.S. at 303.

"'For the past three decades,'" the government has recognized "this dichotomy." <u>Lopez v. Hardin</u>, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) (quoting <u>Pizarro Reyes v. Raycraft</u>, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025) (appeal filed Oct. 24, 2025)). On July 8, 2025, however, the government changed course when the Department of Homeland Security (DHS) issued the following guidance:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are

10

> also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025). The BIA adopted and applied this policy in In re Yajure Hurtado, 29 I. & N. Dec. 216 (2025). But district courts around the country have largely rejected the government's new interpretation of these regulations. See, e.g., Cetino v. Hardin, No. 2:25-CV-1037-JES-DNF, 2025 WL 3558138, at *3 (M.D. Fla. Dec. 12, 2025); Robles v. U.S. Dep't of Homeland Security, No. 1:25-CV-1578, 2025 WL 3558128, at *6 & n.3 (W.D. Mich. Dec. 12, 2025); Martinez-Martinez v. Noem, No. 25CV2975-GPC(VET), 2025 WL 3552746, at *6 (S.D. Cal. Dec. 11, 2025) ("Given the Government's longstanding interpretation of §§ 1225(b) and 1226(a), the [c]ourt is further persuaded that 'seeking admission' applies to arriving aliens and not aliens who have entered without inspection and lived in the United States for years."); Belsai D.S. v. Bondi, - - - F. Supp. 3d - - -, 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) ("Overwhelmingly, courts have rejected the interpretation offered by Respondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' because they

11

entered the United States without inspection."); Pizarro Reyes, 2025 WL 2609425, at *7 (collecting cases). But see Lopez v. Dir. of Enf't & Removal Operations, - - - F. Supp. 3d - - -, 2026 WL 261938, at *8 (M.D. Fla. Jan. 26, 2026) (disagreeing with the statutory interpretation that noncitizens seeking admission form "a distinct and narrower class than applicants for admission"); Mejia Olalde v. Noem, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025) (finding that § 1225(a)(1) "explicitly includes more than just arriving aliens in the definition of 'applicant[s] for admission'"); Vargas Lopez v. Trump, 802 F. Supp. 3d 1132, 1142 (D. Neb. 2025) (finding that "just because [the petitioner] illegally remained in this country for years does not mean that he is suddenly not an 'applicant for admission' under § 1225(b)(2)").

Until recently, appellate courts had yet to weigh in on the issue. On February 6, 2026, the Fifth Circuit Court of Appeals issued a published, but not unanimous opinion, reaching the opposite conclusion. See Buenrostro-Mendez v. Bondi, 166 F.4th 494, 498 (5th Cir. 2026). The majority concluded that an alien without lawful admission who has been present in the United States for a period of time is subject to mandatory detention under §

1225(b)(2).[2] See id. That decision is not binding here. And while the Court respects the reasoned decision of the majority, the dissenting opinion is more persuasive. As such, the Court adopts the reasoning of the Buenrostro-Mendez dissent in full. See id. at 508–21 (Douglas, J., dissenting). For these reasons, the Court rejects Respondents' arguments that Machado-Matos is subject to mandatory detention under § 1225(b)(2).

It is undisputed that Machado-Matos entered the United States without inspection and has been residing here since 2023. Thus, she is not properly detained under § 1225(b)(2) as Respondents contend. Instead, her detention is governed by § 1226(a). As such, the Petition is due to be granted.

Next, the Court must consider the appropriate remedy: immediate release from detention or a bond hearing. An IJ previously denied Machado-Matos's request for a bond hearing on the belief that immigration judges lack the authority to consider such requests under Hurtado. Doc. 1-1 at 12–13. Given BIA precedent, an IJ is likely to refuse to do so again. In the event that occurs, Machado-Matos would receive no relief at all, and the writ of habeas

---

[2] A circuit split is likely to develop on this issue. In ruling on a motion to stay pending appeal, the Seventh Circuit preliminarily determined that the U.S. Department of Homeland Security was not likely to prevail on its argument that "§ 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders." Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1062 (7th Cir. 2025). The issue is also before the Eleventh Circuit. See Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065 (11th Cir.) (oral argument set for the week of April 27, 2026).

corpus issued in this case would be rendered entirely meaningless. Therefore, the Court finds the most appropriate relief is release from detention.[3]

Accordingly, it is **ORDERED**:

1. Machado-Matos's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**. Respondents shall release Machado-Matos **within 24 hours of this Order**, and they shall facilitate her transportation from the detention facility by notifying her counsel when and where she can be collected.

2. Machado-Matos's construed request for a preliminary injunction (Doc. 2) is **DENIED as moot**.

3. The **Clerk** is directed to terminate any motions; enter judgment granting the Petition; and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of March, 2026.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

Jax-9 3/8
c:
Counsel of Record

---

[3] Insofar as Machado-Matos, requests attorney's fees, she may make such a request in a separate motion, if appropriate. See Local Rule 7.01, United States District Court, Middle District of Florida. Any such motion must be supported by a memorandum of law.